IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY COUNCIL, #210870,  )
          )
  Plaintiff,      )
          )
 v.         )   CASE NO. 1:07-CV-331-MEF
          )     [WO]
          )
DAVE SUTTON, et al.,   )
          )
  Defendants.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Timothy Council ["Council"], a state inmate,

challenges the constitutionality of actions taken against him during his confinement in the

Coffee County Jail.  Specifically, Council complains law enforcement officials used

excessive force against him on March 3, 2007 during their efforts to quell a riot in the jail.

Council names Dave Sutton, the sheriff of Coffee County, Alabama, Richard B. Moss, the

jail administrator, and Coffee County sheriff's deputies Glenn Shelton, Alston Redman and

Neal Bradley as defendants.  The allegations central to Council's complaint are that

defendants Shelton and Bradley subjected him to excessive force in violation of the

Fourteenth Amendment.  Specifically, Council alleges these defendants, without

provocation or reason, repeatedly subjected him to tazer fire and struck him with bean bags

fired from a shot gun.  Council also complains defendant Redman witnessed the various

uses of force and failed to intervene.  Finally, Council contends defendants Sutton and Moss are supervisors who should be held responsible for the acts of their subordinates. Council seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Council's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of July 31, 2007 - Court Doc. No. 14*; *Order of January 7, 2008 - Court Doc. No. 22*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and the plaintiff's response in opposition to this motion, the court concludes that the defendants' motion for summary judgment is due to be granted in part and denied in part.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Council is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory

4

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will

preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, in this case the plaintiff, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at

2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Council's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In the present cause of action, Council has demonstrated a genuine issue of material fact in order to preclude entry of summary judgment on his excessive force claim against defendants Shelton, Redman and Bradley in their individual capacities.  The defendants are, however, entitled to summary judgment on all of Council's remaining claims for relief.

## III.  DISCUSSION

### A.  Synopsis of Facts

At this stage of the proceedings, the court must "take the facts alleged in the complaint [and response in opposition to summary judgment] as true and construe them in the light most favorable to [Council].  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)."  *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).  In that light, the facts are that on March 3, 2007, a riot occurred in cell block number 2 of the Coffee County Jail due to the inmates confined therein being denied a second smoke break. Council and his cell mate, Alex Pyatt, entered their cell and closed the door as ordered by various officers responding to the riotous situation in the jail.  Pyatt threw a liquid on deputy Candida Stokes as she escorted a recalcitrant inmate, Marcus Snell, from the cell block.  Stokes believed this liquid to be urine and advised other officers of this incident.  Defendants Shelton, Bradley and Redman  approached Council's cell to take Pyatt into custody for his

7

assault on deputy Stokes.  Shelton, Bradley and Redman repeatedly shouted "'get down'
and stated 'you want to throw piss'...."  *Plaintiff's Complaint - Court Doc. No. 1 at 3.*
Council maintains he complied with all orders issued by the officers, denies acting in a
belligerent manner and asserts he did not in any way present a threat to the officers.
Council describes the subsequent actions of the officers as follows:

> I was already on my knees with my hands in the air in the corner of my cell.
> I was repeat[ed]ly telling the deputy that it wasn't me [that threw the liquid
> on deputy Stokes].  I was then fearing for my life.  The deputy beated on the
> cell door screaming [for the cubicle officer to open the door of] cell 17.
> They had the shotgun and tassers pointed at me and Pike deputy [Glenn
> Shelton] shot me in the upper part of my leg with the [bean bag] shotgun then
> deputy [Neal Bradley] shot me with the tasser, and shocked me repeatedly
> while I was lying on the floor.  The tasser stop for a short second.  I was
> fearing that I was dying.  I was telling the deputy "I'm down, I'm down." ....
> I moved slowly under the bed for cover from the gun shots, repeatedly
> getting tassed at the same time.  Then I heard a voice saying "get from under
> the bed."  Then deputy Glenn Shelton shot me in the ribs.  I screamed "o.k.,
> o.k.  I'm coming out."  I came [out] from under the bed, still fearing for my
> life.  I [was] repeatedly saying, "it wasn't me," then I seen the back of the
> shot gun coming toward my head, I turn my head quickly.  Then one of the
> jailer picked me up from the floor, keeping [deputy Shelton] from striking me
> with his weapon.  Then I was taken up front where I was mentally abused
> and intimidated [by Glenn Shelton and Dave Sutton in their attempts to make
> me feel guilty for something I did not do], and called [a liar] closely in my
> face.

*Plaintiff's Complaint - Court Doc. No. 1* at 4.[2]  Council maintains and the evidentiary
materials submitted by the defendants indicate that Council received contusions to his left

---

[2]The court utilized the complaint, amendment to the complaint, defendants' special report and plaintiff's
response in opposition to the report to determine the correct identity of the officers who utilized force during the
incident made the basis of this case.

thigh and rib area, an abrasion on his chest and numbness in his left hand as a result of the various acts of force used against him.

The defendants adamantly deny the allegations made against them.  Specifically, they assert Bradley utilized the taser only when Council refused several orders to get down on the ground, moved behind a sheet strung across the cell, raised his hand in an aggressive manner and cursed the officer.  They further contend Shelton deployed only one bean bag round from his shotgun due to Council's continued refusal of orders issued by the officers and his failure to exit from under a bunk where he had begun to rummage through unknown items.  The defendants maintain the officers used only the force necessary to subdue Council and gain control of an extremely volatile situation.  The evidentiary materials filed by the defendants support their version of the facts.

### B.  Absolute Immunity Under the Eleventh Amendment[3]

To the extent Council sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails."  *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112

---

[3]Eleventh Amendment immunity does not foreclose suits for equitable, i.e., injunctive and/or declaratory, relief; rather, if applicable, it forecloses suits for compensable damage awards.

(designates county sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.  Thus, the defendants are entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacities.

### C.  Excessive Force - Sheriff Dave Sutton and Captain Richard Moss

It is undisputed that defendants Sutton and Moss did not personally participate in the uses of force about which Council complains.  The law is well settled that defendants "can have no respondeat superior [or vicarious] liability for a section 1983 claim."  *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248,

1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).  Thus, defendants Sutton and Moss are liable for the challenged actions of other officers only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).  In his complaint, as amended, Council does not allege defendants Sutton or Moss personally used force against him and these defendants deny any personal involvement with such actions. *Defendants' Exhibit B (Affidavit of David Sutton) - Court Doc. No. 12-2* at 5-6 ("When I arrived at the jail, there was an obvious disturbance in Cell Block 2 and I went straight to the Cell Block.  Several of my deputies were in the process of removing prisoners from Cell Block 2 to intake."); *Defendants' Exhibit E (Affidavit of Richard B. Moss) - Court*

11

*Doc. No. 12-3* at 3 ("By the time I arrived at the jail, the disturbance was over.").

Based on the foregoing, defendants Sutton and Moss may be held liable in this 42 U.S.C. § 1983 action if their actions bear a causal relationship to this purported violation of Council's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Council must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Sutton and Moss as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates Council has failed to meet this burden.

(i) <u>Causal Relationship Test</u>. The record before the court contains no evidence to support an inference that Sutton or Moss directed county personnel to act unlawfully or knew that county personnel would act unlawfully and failed to stop such actions. Council has likewise failed to show a history of widespread abuse at the Coffee County Jail which put either of the aforementioned defendants on requisite notice of incidents of excessive

force against inmates confined in the jail.  Consequently, neither method of establishing liability under the causal relationship test provides a basis for liability under § 1983.  The court will therefore address whether a custom or policy of the Coffee County Jail resulted in a violation of Council's constitutional rights.

(ii)  <u>Applicable Jail Policy</u>.  The policy of the Coffee County Jail provides that "excessive force is not to be used on anyone - including inmates in the jail." *Defendants' Exhibit B (Affidavit of David Sutton) - Court Doc. No. 12-2* at 7.  The affidavits submitted by defendants Sutton and Moss establish that, to their knowledge, jail staff followed the directives of this policy.

Tthere is nothing before the court to indicate that any policy of the Coffee County Jail resulted in the actions about which the plaintiff complains.  *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Furthermore, the record is devoid of evidence that jail personnel implemented the applicable policy to infringe upon this inmate's constitutional rights, *see, e.g., Sasnett v. Litscher,* 197 F.3d 290, 293 (7th Cir. 1999); rather, the objective evidence before the court demonstrates jail officials implemented the policy to guarantee protection of these rights.  Summary judgment is therefore due to be granted in favor of defendants Sutton and Moss on the excessive force claims.

**D. Excessive Force - Glenn Shelton, Alston Redman and Neal Bradley**

As the Eleventh Circuit recently opined:

> There are a number of different types of claims that arise under the Eighth Amendment's cruel and unusual punishment clause, including distinct claims for basic cruel and unusual punishment, for excessive force against prisoners, and for deliberate indifference to prisoners' serious medical needs. Courts apply a different test to each. *See, e.g.*, *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (applying the test for an Eighth Amendment deliberate indifference violation); *Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002) (applying the test for an Eighth Amendment excessive force violation); *Hope v. Pelzer*, 240 F.3d 975, 978 & n.7 (11th Cir. 2001) (applying the test for an Eighth Amendment basic cruel and unusual punishment violation), *rev'd on other grounds*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Pretrial detainees, who are not protected by the Eighth Amendment, can bring the same claims under the Fourteenth Amendment. *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) ("[I]t makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving ... pretrial detainees.'" (omission in original) (citation omitted)).

*Danley*, 540 F.3d at 1306; *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful

difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.).  Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims of excessive force because the standard for violations of the Eighth Amendment apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

       **1.  Qualified Immunity**.  With respect to Council's claims of excessive force, the defendants assert they are entitled to qualified immunity.  However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Constitution because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301. Thus, a qualified immunity defense is not available when a plaintiff asserts the use of excessive

force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment, unless the force used was *de minimis*.  *Id.* at 1302; *see also Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether Council's allegations that the defendants maliciously and sadistically used excessive force against him and/or witnessed the uses of force without intervening to protect him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

In *Danley*, the Eleventh Circuit explained:

> Whether a jailer's use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the jailer's act "shocks the conscience," *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied ... maliciously and sadistically for the very purpose of causing harm.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

540 F.3d at 1307.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible

officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. Additionally, it is well settled that

> [w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting-whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated-that use of force is excessive. *See Bozeman*, 422 F.3d at 1272 (giving special weight to the fact that the jailers "continued [to] use ... force in a manner that was severe enough to render [the plaintiff], at the very least, unconscious after [he] had surrendered"); *Skrtich*, 280 F.3d at 1303 ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."); *see also Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir.1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir.1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir.1988); *Perry v. Thompson*, 786 F.2d 1093, 1093-95 (11th Cir.1986); *cf. Vinyard*, 311 F.3d at 1348. Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need.

*Danley*, 540 F.3d at 1309.

_____Council asserts defendant Bradley shot him with a taser without provocation and repeatedly used the taser on him when he posed no threat to any of the officers. Council also maintains defendant Shelton shot him with several bean bag rounds for no reason and defendant Bradley continued to tase him even after he had succumbed to the officers. In addition, Council asserts defendant Redman witnessed the force utilized by defendants

17

Shelton and Bradley but failed to intervene.  The defendants deny the allegations of excessive force and maintain they used only the amount of force necessary to quell Council's resistance to their orders and efforts to place him in custody.  Viewing the complaint in the light most favorable to the plaintiff, the court concludes Council has set forth facts which demonstrate a violation of his constitutional rights.  "Having established a constitutional violation, the next step in the qualified immunity analysis usually is to determine whether the right was clearly established.  *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful.  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)."  *Danley*, 540 F.3d at 1310.  Under the facts presented by the plaintiff, disputed issues of material fact exist regarding the need for the use of force and whether the amount of force used was appropriate.  Thus, defendants Shelton, Redman and Bradley are not entitled to qualified immunity, *Id*.; *Skrtich*, 280 F.3d at 1301, and the motion for summary judgment with respect to the excessive force claims against them in all respects, with the exception of tthe request for damages in their official capacities, is due to be denied.

## E.  Derogatory Comments and Intimidation

Council alleges defendants Sutton and Shelton attempted to intimidate him after the

incident by referring to him as a liar and verbally chastised him in an effort to make him

feel guilty for his actions.  An essential element of a 42 U.S.C. § 1983 action is that the

conduct complained of deprived the plaintiff of rights, privileges or immunities secured by

the Constitution or laws of the United States.  *American Manufacturers Mutual Ins. Co.

v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*,

451 U.S. 527 (1981).  The statements about which the plaintiff complains, standing alone,

do not violate the Constitution.  *Cf. Paul v. Davis*, 424 U.S. 693 (1976).  Threatening,

derogatory or abusive comments made by county sheriff or his deputy to an inmate do not

rise to the level of a constitutional violation.  *Sepulveda v. Burnside*, 170 Fed. Appx. 119,

124 (11th Cir. 2006) (reference to plaintiff "as a 'snitch' in the presence of other inmates"

does not rise to the level of a constitutional violation); *Edwards v. Gilbert*, 867 F.2d 1271,

1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional

rights); *McFadden v. Lucas*, 713 F.2d 143; 147 (5th Cir. 1983) (threatening demeanor of

officers undertaken "to enforce reasonable security needs are not violative of a prisoner's

constitutional rights."); *see also Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973).  Thus, the

intimidating and derogatory comments about which Council complains fail to demonstrate

that defendants Sutton and Shelton deprived him of any protected right, privilege or

immunity.  Consequently, this claim entitles Council to no relief and defendants Sutton and

Moss are entitled to summary judgment.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment regarding the plaintiff's claims for monetary damages lodged against them in their official capacities be GRANTED as the defendants are entitled to absolute immunity from these claims.

2.  The defendants' motion for summary judgment filed on behalf of Dave Sutton and Richard Moss with respect to the plaintiff's excessive force claims presented against these defendants in the remaining aspects of their official capacities and in all aspects of their individual capacities be GRANTED.

3.  The defendants' motion for summary judgment be GRANTED in favor of Dave Sutton and Glenn Shelton as to the plaintiff's claim of intimidation and derogation.

4.  The defendants' motion for summary judgment regarding the plaintiff's excessive force claims against Glenn Shelton, Alston Redman and Neal Bradley in their official capacities for declaratory or injunctive relief and all aspects of their individual capacities be DENIED.

5.  This case be set for a bench trial before the district judge assigned this case on the plaintiff's surviving excessive force claims against Glenn Shelton, Alston Redman and Neal Bradley.

It is further

ORDERED that on or before June 22, 2009 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of June, 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

21